UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

GERALD EDWARD LOPEZ, BETSY LOPEZ,
THOMAS L. LOPEZ and GERALD EDWARD LOPEZ, JR.,

Plaintiffs,

vs.

CITY OF LAKEWOOD,
MICHELE DELEON, JAMES J. DAVIES,
SEAN RADKE, BRIAN LOVEJOY, and
JENNIFER DOUGHERTY

Defendants.
_____

**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND**
_____

NOW COME the plaintiffs, Gerald Edward Lopez, Thomas L. Lopez, Gerald Edward Lopez, Jr. and Betsy Lopez, by and through their attorney, Brice A. Tondre, and for their complaint against the defendants named hereinafter state as follows:

**PARTIES**

1.　　The plaintiff, Gerald Edward Lopez ("Gerald Lopez"), is an individual citizen of the state of Colorado residing at 1257 Allison Street, Lakewood, Colorado 80214.   Gerald Lopez is the husband of Betsy Lopez.

2.　　The plaintiff Betsy Lopez is an individual citizen of the state of Colorado.   She resides at 1257 Allison Street, Lakewood, Colorado 80214.   Betsy Lopez is the wife of Gerald Lopez.

3. The plaintiff, Thomas L. Lopez, is an individual citizen of the state of Colorado. He resides at 1257 Allison Street, Lakewood, Colorado 80214. Thomas Lopez is the son of Gerald and Betsy Lopez.

4. The plaintiff, Gerald Edward Lopez, Jr. ("Gerald Lopez, Jr."), is an individual citizen of the state of Colorado. He resides 8285 W. 12th Place, Lakewood, CO 80214. Gerald Lopez, Jr. is the son of Gerald Lopez and Betsy Lopez.

5. The defendant, Michele DeLeon ("Agent DeLeon"), was at all relevant times an agent of the Lakewood, Colorado Police Department.

6. The defendant, Sean Radke ("Agent Radke"), was at all relevant times an agent of the Lakewood, Colorado Police Department.

7. The defendant, James J. Davies ("Agent Davies"), was at all relevant times an agent of the Lakewood, Colorado Police Department.

8. The defendant, Brian Lovejoy ("Agent Lovejoy"), was at all relevant times an agent of the Lakewood, Colorado Police Department.

9. The defendant, Jennifer Dougherty ("Agent Dougherty"), was at all relevant times an agent of the Lakewood, Colorado Police Department.

10. The defendant, City of Lakewood, Colorado, is a corporate body politic which employs police agents through it police department.

## JURISDICTION

11. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1367 in that one of the causes of action alleged herein arises under the Laws and Constitution of the United States and the other causes of action are so related to the federal cause of action that they form part of the same controversy under Article Three of the United States Constitution.

**FACTS COMMON TO ALL CLAIMS**

12. On April 10, 2010 at approximately 2:45 p.m., Thomas Lopez became concerned about an argument between his father, Gerald Lopez, and his mother, Betsy Lopez, and called 911.

13. It should have been obvious to the 911 operator from the nature of the communication that Thomas Lopez was not functioning at full mental capacity.

14. Thomas Lopez, who was 31 years old on April 10, 2010, has moderate mental retardation, an IQ of approximately 40 to 50 and functions at the level of a third or fourth grader. He is unable to read or write or even to tell the time of day from a timepiece. In addition to his developmental disability, Thomas Lopez also suffers from cerebral palsy, a seizure disorder, and severe depression. As a result of the incident complained of herein, Thomas now suffers from post-traumatic stress disorder and worsened depression.

15. City of Lakewood had a computerized I-leads system which contained information regarding a previous family disturbance which disclosed that Thomas Lopez, of 1257 Allison Street, was a special needs person, then 29 years of age, who operates at a sixth grade level and is epileptic. I-leads reported that Thomas Lopez was transported to the hospital on a mental health hold as a result of the previous family disturbance. Neither the City of Lakewood nor the agents it dispatched availed themselves of the I-leads system which would have provided the information about Thomas Lopez simply by inputting his name or address.

16. Agents DeLeon and Davies were dispatched to 1257 Allison Street, Lakewood, Colorado, as a result of the 911 call from Thomas Lopez.

17. Gerald Lopez and Betsy Lopez became aware that Thomas Lopez placed a 911 call during the period he was doing so. Knowing this, they anticipated arrival of police officers and waited in the front yard for them to arrive.

18. When Agent DeLeon arrived, Thomas Lopez exited the front gate to speak with her. He was explaining to her that the police were not needed.

19. Shortly after Thomas Lopez began speaking to Agent DeLeon, Gerald Lopez exited the front gate to join in the conversation. As Gerald Lopez was walking toward Thomas Lopez and Agent DeLeon, utilizing his cane to assist him in walking, Agent DeLeon screamed to drop the cane. Gerald Lopez explained to Agent DeLeon that he needed it to walk. He was not utilizing the cane in any aggressive or threatening manner but merely to walk. As he neared her, she pulled her baton, knocked the cane out from under him. After the cane was out of his hand, Agents DeLeon and Davies knocked him to the ground and handcuffed him. Despite the cane having been removed from his hand, Agents DeLeon and Davies, without probable cause used excessive force to illegally arrest Gerald Lopez.

20. Seeing the aggressive and unnecessary behavior of Agents DeLeon and Davies, Thomas Lopez began protesting their brutal and unreasonable conduct toward his father.

21. While this was occurring, Agent Radke arrived. After noting that Thomas Lopez was protesting the conduct of Agent DeLeon with respect to his father, Gerald Lopez, Agent Radke grabbed Thomas Lopez, picked him up off the ground and threw him into the chain link fence causing his right ear to be lacerated by one of the top prongs. The laceration needed six stitches in order to be closed.

22. The conduct of Agent Radke caused Thomas Lopez to suffer a seizure. In response to the movements caused by the seizure, Agent Radke tazed Thomas Lopez in the left

upper chest.   Thomas Lopez fell to the ground still in the throes of a seizure when Agent Radke applied his tazer to the back, upper buttocks of Thomas Lopez, applying a second and much greater charge.

23. Both Betsy Lopez and Gerald Lopez, Jr. were vocally protesting the conduct of Agents DeLeon, Davies and Radke. In response, Agent Radke told Betsy Lopez she should hang a sign around that retardo's neck, referring to Thomas Lopez. Had the I-leads system been utilized, the dispatched Agents would have known of Thomas Lopez' infirmities before they arrived

24. By this time, Agent Lovejoy had arrived. Agent Lovejoy and Agent Davies entered the front yard of the premises and arrested Gerald Lopez, Jr. for refusing to stop yelling statements such as:

> (a) The police beat up my father.
>
> (b) Are you recording this?   Make sure you record all of this (talking to his daughter who was recording the events with a digital camera. His daughter was ordered by the Agents to cease recording or she would be arrested).
>
> (c) The police beat up an old man with a cane and a boy with the mental capacity of a five year old.

25. Gerald Lopez, Jr. was charged with obstructing a police officer in violation of C.R.S. § 18-8-104(1)(a) and issued a summons.

26. Gerald Lopez was arrested and taken to the Lakewood Police Department where he was detained until he complained of chest pain. Upon voicing complaints of chest pain, he was taken to the hospital.   Thereafter, without probable cause, he was charged with child abuse, disorderly conduct, resisting arrest, obstructing governmental operations and obstructing a peace officer and released on bond.

27. Thomas Lopez was arrested and taken to St. Anthony's Medical Center where his ear was repaired with six stitches. Thereafter he was issued a summons for obstruction and resisting arrest.

28. While at the Emergency Department of St. Anthony's Central Hospital, Betsy Lopez, the mother of Thomas Lopez, insisted upon accompanying Thomas Lopez to jail so she could advise his jailers of his serious medical condition and serious medical needs. In response to this entreaty by Betsy Lopez, Agent Dougherty picked her up, slammed her face first onto a gurney and handcuffed her.

## FIRST CLAIM FOR RELIEF

29. Plaintiff, Gerald Lopez, incorporates by reference the allegations contained in paragraphs 1 through 28 above.

30. Gerald Lopez approached Agents DeLeon and Davies in an effort to explain to them that his disabled, retarded son had over-reacted to a verbal altercation between he and his wife, Betsy Lopez, in making the 911 call.

31. Gerald Lopez is himself disabled and needs a cane in order to walk safely. He was utilizing the cane while walking toward Agents DeLeon and Davies. He was not at any time using the cane in a menacing fashion. Agent DeLeon ordered him to drop his cane.

32. After the cane was out of his hand, Agents DeLeon and Davies attacked Gerald Lopez throwing him to the ground and handcuffing him.

33. At the point in time when Agents DeLeon and Davies assaulted Gerald Lopez, they had no reasonable suspicion nor probable cause to believe he had committed a crime. Even if they did have probable cause to arrest, the force used was excessive. Had they merely listened to the explanation of Thomas Lopez and Gerald Lopez, they would have known that this was nothing

more than an argument between husband and wife which was mischaracterized by their mentally and physically disabled son.

34. Agents DeLeon and Davies were trained by the Lakewood Police Department to listen rather than talk and defuse rather than escalate. They did the opposite here which was unreasonable.

35. Agents DeLeon and Davies performed the complained of acts while acting under color of state law. Their conduct was unreasonable, without probable cause and without reasonable suspicion that a crime had been committed. The force used was excessive. The conduct of Agents DeLeon and Davies violated Gerald Lopez's Fourth Amendment rights to be free from unreasonable seizure and the use of excessive force.

36. Gerald Lopez suffered injuries to his back and wrists as a result of the excessive force utilized by Agents DeLeon and Davies.

37. Pursuant to 42 U.S.C. § 1983, Gerald Lopez is entitled to recover damages caused by the violation of his rights not to be unreasonably seized and subjected to excessive force in violation of the Fourth Amendment to the United States Constitution. Pursuant to 42 U.S.C. § 1988, Gerald Lopez is entitled to recover his attorney's fees and costs incurred in prosecuting this action.

38. The unreasonable seizure and use of excessive force on Gerald Lopez severely injured him both physically and emotionally and caused him severe humiliation and embarrassment.

39. As a direct and proximate result of the conduct of Agents DeLeon and Davies, Gerald Lopez has suffered physical and emotional injuries, economic and non-economic damages, disfigurement and disability and embarrassment and humiliation.

40. The conduct of Agents DeLeon and Davies was in reckless and callous indifference to Gerald Lopez's federally protected rights, justifying the award of punitive damages.

## SECOND CLAIM FOR RELIEF

41. Plaintiff, Thomas Lopez, incorporates by reference the allegations contained in paragraphs 1 through 40 above.

42. When Thomas Lopez witnessed the aggressive attack on his father, Gerald Lopez, by Agents DeLeon and Davies, he became very disturbed and went to the aid of this father urging DeLeon and Davies not to injure him and informed them that he had done nothing wrong.

43. Agent Radke had more than ample opportunity to observe that Thomas Lopez was not functioning at the full mental capacity of someone his age and to learn of this fact through the I-leads system.

44. Despite it being obvious to him that Thomas Lopez was disabled, he picked him up, threw him against a fence lacerating his ear. This caused Thomas Lopez to go into a seizure. Agent Radke then fired his tazer into Thomas Lopez's upper left chest, causing him to fall to the ground while still having a seizure. While lying on his face on the ground and still exhibiting signs and symptoms of a seizure, Agent Radke placed his tazer on the upper buttocks of Thomas Lopez and applied lengthy voltage to Thomas Lopez. Agent Radke caused Thomas Lopez to be charged with resisting arrest and obstruction.

45. Agent Radke's use of force was unreasonable, being done without probable cause or reasonable suspicion of criminal activity, and was excessive. Agent Radke then handcuffed Thomas Lopez.

46. Agent Radke's conduct with respect to Thomas Lopez was under color of state law.

47. Agent Radke's conduct with respect to Thomas Lopez violated his Fourth Amendment right to be free from unreasonable seizure and the use of excessive force.

48. Pursuant to 42 U.S.C. § 1983, Thomas Lopez is entitled to recover damages caused by the violation of his rights (a) not to be unreasonably seized and subjected to excessive force in violation of the Fourth Amendment to the United States Constitution. Pursuant to 42 U.S.C. § 1988, Thomas Lopez is entitled to recover his attorney's fees and costs incurred in prosecuting this action.

49. The unreasonable seizure and use of excessive force on Thomas Lopez severely injured him both physically and emotionally and caused him severe humiliation and embarrassment.

50. As a direct and proximate result of the conduct of Agent Radke, Thomas Lopez has suffered physical and emotional injuries, economic and non-economic damages, disfigurement and disability and embarrassment and humiliation.

51. The conduct of Agent Radke was in reckless and callous indifference to Thomas Lopez's federally protected rights, justifying the award of punitive damages.

### THIRD CLAIM FOR RELIEF

52. Plaintiff, Gerald Lopez, Jr., incorporates by reference the allegations contained in paragraphs 1 through 51 above.

53. Gerald Lopez, Jr. was unreasonable seized for verbal utterances protesting the conduct of the police officers with respect to his father, Gerald Lopez, and his brother, Thomas Lopez.

54. The arrest of Gerald Lopez, Jr. was in violation of his First Amendment right to freedom of expression and his Fourth Amendment right to be free from unreasonable seizure.

55. Gerald Lopez, Jr. was arrested by Agents Radke and Lovejoy while acting under color of state law.

56. Pursuant to 42 U.S.C. § 1983, Gerald Lopez, Jr. is entitled to recover damages caused by the violation of his rights to freedom of expression regarding the conduct of public officials. Pursuant to 42 U.S.C. § 1988, Gerald Lopez, Jr. is entitled to recover his attorney's fees and costs incurred in prosecuting this action.

57. The unreasonable seizure of Gerald Lopez, Jr. injured him physically and emotionally and caused him severe humiliation and embarrassment.

58. As a direct and proximate result of the conduct of Agents Radke and Lovejoy, Gerald Lopez, Jr. has suffered physical and emotional injuries, economic and non-economic damages, disfigurement and disability and embarrassment and humiliation.

59. The conduct of Agents Radke and Lovejoy was in reckless and callous indifference to Gerald Lopez, Jr.'s federally protected rights, justifying the award of punitive damages.

## FOURTH CLAIM FOR RELIEF

60. Plaintiff, Betsy Lopez, incorporates by reference the allegations contained in paragraphs 1 through 59 above.

61. Throughout the encounter with Agents DeLeon, Davies and Radke, Betsy Lopez continuously informed them of the disabilities of her husband, Gerald Lopez, and her son, Thomas Lopez. She suffered emotional distress as she observed excessive use of force on her husband and son.

62. When she insisted, for the medical and emotional well-being of her son, to accompany him to jail, Agent Dougherty forcibly slammed her on to a gurney on her face and

handcuffed her.   This was excessive use of force without probable cause, reasonable suspicion of criminal activity or the need for protection of police officers.

63.     Agent Dougherty was acting under color of state law when she used excessive force with respect to Betsy Lopez and arrested her.

64.     The conduct of Agent Dougherty violated Betsy Lopez's Fourth Amendment right to be free from unreasonable seizure and the use of excess force.

65.     Pursuant to 42 U.S.C. § 1983, Betsy Lopez is entitled to recover damages caused by the violation of her rights to be free from unreasonable seizure and the use of excessive force in violation of the Fourth Amendment to the United States Constitution.   Pursuant to 42 U.S.C. § 1988, Betsy Lopez is entitled to recover her attorney's fees and costs incurred in prosecuting this action.

66.     The unreasonable seizure and use of excessive force on Betsy Lopez injured her both physically and emotionally and caused her severe humiliation and embarrassment.

67.     As a direct and proximate result of the conduct of Agent Dougherty, Betsy Lopez has suffered physical and emotional injuries, economic and non-economic damages, disfigurement and disability and embarrassment and humiliation.

68.     The conduct of Agent Dougherty was in reckless and callous indifference to Betsy Lopez's federally protected rights justifying the award of punitive damages.

### FIFTH CLAIM FOR RELIEF

69.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 68 above.

70.     City of Lakewood, Colorado, through its police department, is responsible for employing, training and dispatching police agents to deal with breaches of the peace.

71. The City of Lakewood police department has a system called I-leads for identifying special needs and characteristics of residents of Lakewood who have had previous encounters with its police agents.

72. The City of Lakewood dispatcher did not advise the police agents who were dispatched to the scene of the information in its I-leads system regarding Thomas Lopez. Nor did the agents who were dispatched request information regarding the 911 caller or his premises.

73. The City of Lakewood, while acting under color of state law, unreasonably failed to inform the police agents it dispatched to the scene of the information it had with respect to Thomas Lopez which would have raised a red flag with respect to both the caller and the premises.

74. The failure to inform the dispatched police agents about the facts contained in the I-leads system constitutes a failure to train and educate its police agents which resulted, at least in part, in the violation of plaintiffs' constitutional rights through the unreasonable escalation of events leading to the use of excessive force.

75. The failure of the dispatched police agents to request any I-leads information and the failure of the dispatcher to provide same, demonstrates a lack of training by the City of Lakewood police department.

76. The City of Lakewood should have advised the use of special care and dispatched a specialist in dealing with persons like Thomas Lopez.

77. The City of Lakewood's failure to do any of the foregoing resulted, at least in part, in the violation of each plaintiff's rights under the First and Fourth Amendments to the United States Constitution.

78. Pursuant to 42 U.S.C. sec. 1983, each of the plaintiffs are entitled to recover the damages caused by the above alleged conduct in violation of their individual Constitutional rights.

Pursuant 42 U.S.C. sec. 1988, the plaintiffs are entitled to recover their attorney's fees and costs incurred in prosecuting this action.

79. As a direct and proximate result of the conduct of the City of Lakewood each plaintiff suffered the injuries and damages alleged above.

### SIXTH CLAIM FOR RELIEF

80. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 79 above.

81. The conduct set forth above with respect to each of the plaintiffs constitutes an assault and false arrest by each of the Lakewood Police Department agents who are alleged to have performed those acts. As a direct and proximate result of the assault and false arrest, each of the plaintiffs has suffered physical and emotional injuries, economic and non-economic damages, disfigurement and disability and embarrassment and humiliation.

82. The conduct of the City of Lakewood alleged above aided, abetted and failed to deter or prevent the assault and false arrest of each plaintiff by its police agents and thereby caused or contributed to the injuries and damages alleged above..

83. The conduct of all said Lakewood Police Department agents was willful and wanton and in reckless and callous indifference to the plaintiffs' rights to be free from a violation of their rights.

WHEREFORE, plaintiffs pray that the defendants be cited to appear and answer herein, and that, upon trial of this matter, plaintiffs be awarded judgment for the damages found by the trier of fact, both compensatory and punitive, that they be awarded their attorney's fees and costs incurred in prosecuting this action, and that they be granted such other and further relief as the Court deems appropriate in the circumstances.

**PLAINTIFFS DEMAND TRIAL TO A JURY GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES AND PRESERVED BY RULE 38 F.R.C.P.**

_____
Brice A. Tondre
215 South Wadsworth Blvd., Suite 500
Lakewood, Colorado     80226
Telephone: 303-296-3300
Fax: 303-238-5310
briceatondrepc@msn.com

ATTORNEY FOR PLAINTIFFS

**Address of Plaintiffs**:
1257 Allison Street
Lakewood, Colorado     80214

8285 W. 12th Place
Lakewood, CO 80214